UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Vinny J. Scarnici**

   v.                                                  Case No. 17-cv-182-PB
                                                      Opinion No. 2018 DNH 208

**Town of Pittsburg**

## MEMORANDUM AND ORDER

This is an employment dispute between Vinny J. Scarnici and the Town of Pittsburg, New Hampshire ("the Town"). Scarnici worked for Pittsburg both as a part-time police officer and as the Town's Road Agent. He alleges that the Town did not pay him for certain hours worked, paid him a stipend that was below both his stipulated hourly rate and the minimum wage, and did not properly compensate him for overtime performed. Scarnici's complaint includes three counts: 1) violation of the Fair Labor Standards Act ("FLSA"), 2) breach of contract and the covenant of good faith and fair dealing, and 3) unjust enrichment and _quantum_ _meruit_. The Town has filed a partial motion for summary judgment challenging only Scarnici's FLSA claims.

## I. BACKGROUND[1]

### A. Facts

Scarnici's FLSA claims are based on a number of discrete events that give rise to different alleged violations. I will address them in turn.

#### 1. Police Academy

Scarnici was hired as a part-time police officer on December 31, 2013, and placed on the Town's payroll on January 1, 2014. Completing the police academy was a condition of his employment. He says that, had he failed to graduate the academy, the Town would have terminated him. He attended the academy from February 8, 2014, until May 9, 2014, when he graduated. He began working as an active duty officer on May 10, 2018. Approximately two weeks later, he received a check for $750 for his time at the academy, which was the only compensation he would receive for that period.

---

[1] The facts are stated in the light most favorable to the plaintiff. Less than 24 hours before the hearing on this motion, plaintiff submitted a surreply that attached eight new exhibits and raised new arguments of law and fact. The surreply was submitted 20 days after defendant's reply, in violation of Local Rule 7.1(e)(3) which provides that if "a reply has been filed . . . a surreply may be filed within five (5) days of the date the reply was filed." Plaintiff's counsel provided no legitimate reason for the delay. Although I am troubled by counsel's behavior on this motion, the "philosophy that actions should ordinarily be resolved on their merits", Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1989) (citations omitted), counsels that I deny defendant's motion to strike that surreply and rely on those belatedly filed exhibits in this order. And so I will.

Upset at the amount, Scarnici went to speak to Richard Lapoint, the Chief of Police. In his deposition, Scarnici recounted that Lapoint told him

> that he had multiple conversations with the selectmen, and the selectmen decided that they were going to pay me a thousand dollars. And the conversation with him is that didn't even cover one week of gas driving back and forth to Concord, and I was upset. And I said I wanted to talk to the selectmen. And he said, and I quote, if you go to the selectmen, you will not work for the PD, end quote.

Id. at 38:3-12.

Another officer, Brendon McKeage, told Scarnici that he was compensated portal to portal when he attended the academy.[2] Some years later, after McKeage had become a selectman, Scarnici spoke to McKeage again. In August or September of 2016, Scarnici called Selectman McKeage to complain about his compensation during his time at the academy. Scarnici told McKeague that Chief Lapoint

> kept telling me, I'm talking to the selectmen. We're going to pay you. They're going to make a decision on how much we're going to pay you, when we're going to pay you. We might pay you at the end. We might just give you one big stipend at the end. Just keep track of your time.

Upon hearing this, McKeage told Scarnici "that that's not the case at all." McKeage had "said to Chief Lapoint, where is the

---

[2] Chief Lapoint claims in his affidavit that all individuals who attended the academy as a condition of employment before plaintiff received a stipend instead of hourly compensation.

3

time for the new man from Mass? Where is his paycheck?" As plaintiff relays the 2014 story, "Chief Lapoint said to Brendon McKeage, I made a deal with the new man. He's going to go for free." In response, McKeage told Lapoint "wait a minute. Nobody goes for free. We – I don't even think we can make – do this. He needs a paycheck." Lapoint then said (according to Scarnici via McKeage), "no, it's all worked out. He's not getting a paycheck until he starts working." Some weeks later, Lapoint told McKeage, "he's not getting a check. We're just going to give him a stipend at the end, and we've made an agreement he's not getting paid while he's going to the academy." Scarnici reported that McKeage "thought that was very bizarre, because no other police officer had gone through the academy for free."

### 2. Road Agent

Scarnici was elected to serve as Pittsburg's Road Agent on March 10, 2015, and he began his employment on March 13, 2015. He argues that he was not compensated for duly earned overtime in that position.

### 3. Other incidents

Certain other incidents are addressed in the Town's motion without written response from Scarnici. A Bill of Services, for instance, details work that Scarnici allegedly performed in May 2014 using an all-terrain vehicle. See Doc. No. 15-5. At his

deposition, Scarnici asserted that he was not paid for certain work at a Fourth of July police association fundraiser in 2014. See Doc. No. 15-2, 84:11-85:21.  Finally, during the deposition, Scarnici produced a "list of everything that I did not get paid for from the police department."  Id. at 43:9-11; "Unpaid Wage Summary," Doc. No. 15-6.  At the hearing on the pending motion, counsel for Scarnici abandoned his FLSA claims with respect to all of these incidents.  Accordingly, the only FLSA claims that Scarnici pursues at this stage arise from his attendance at the police academy and his work as Road Agent.

## II. **LEGAL STANDARD**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must consider the evidence submitted in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

A party seeking summary judgment must first show that there is no genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A material fact "is one 'that might affect the outcome of the suit under the governing law.'"  United States v. One Parcel of Real Prop. with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty

5

Lobby, Inc., 477 U.S. 242, 248 (1986)). If the moving party satisfies this burden, the nonmoving party must then "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

## III. ANALYSIS

As noted above, the two FLSA claims Scarnici pursues arise from his work as Road Agent and his time at the police academy. I will address each in turn.

### A. Road Agent

Scarnici asserts that he was entitled to overtime pay during his employment as Road Agent.[3] The Town contends that, as an elective office, the job of Road Agent is exempt from the FLSA. The burden is on the Town, as the employer, to prove that an FLSA exception applies. Marzuq v. Cadete Enterprises, Inc., 807 F.3d 431, 438 (1st Cir. 2015). The First Circuit construes FLSA exemptions narrowly against the employer. Id. (citing

---

[3] At oral argument, Scarnici for the first time, and without citation to legal authority, posited that the hours he worked in a given week as Road Agent should be summed with the hours he worked in that same week as a part-time police officer. Because none of plaintiff's Road Agent hours fall within the ambit of the FLSA, I decline to address this argument.

Reich v. John Alden Life Ins. Co., 126 F.3d 1, 7 (1st Cir. 1997)).

Barring certain exceptions, the FLSA defines the term "employee" to mean "any individual employed by an employer." 29 U.S.C. § 203(e)(1). One such exception is for elected public officials. The statute limits its protections to

> any individual employed by a State, political subdivision of a State, or an interstate governmental agency, other than such an individual—
>
> Who is not subject to the civil service laws of the State, political subdivision, or agency which employs him; and
>
> Who holds a public elective office of that State, political subdivision, or agency.

Id. §§ 203(e)(2)(C)(i)-(ii).

In other words, individuals who hold an elected public office and are not subject to the civil service laws are not covered by the FLSA. New Hampshire towns may choose whether to elect by ballot or have the selectmen appoint a highway agent to a two- or three-year term. N.H. Rev. Stat. Ann. § 231:62-a(I). It is an uncontested fact that Scarnici was elected by the Town on March 10, 2015. As Road Agent, then, Scarnici held "a public elective office."

Scarnici's counsel, unsupported by any legal authority, contends that the Town is not a "political subdivision of a State." He is wrong. In New Hampshire, "cities and towns are

7

political subdivisions of a single state, organized for the benefit, and serving at the pleasure, of the sovereign." Lower Vill. Hydroelectric Assocs., L.P. v. City of Claremont, 147 N.H. 73, 77 (2001) (citing Wooster v. Plymouth, 62 N.H. 193, 208 (1882)). Counsel's less-than-clear position at oral argument seemed to be that, read literally, the phrase political subdivision of a state could only mean agencies of a state because "it would need to be defined by the statute that a municipality is a public subdivision of the state." This reading goes against both settled law and common sense. Cf. John F. Manning, The Absurdity Doctrine, 116 Harv. L. Rev. 2387, 2468 (2002) (explaining that even textualists acknowledge that Congress presumptively legislates against "a generally applicable background convention" that includes prior legal determinations and background norms). Accordingly, the Town is a political subdivision of New Hampshire.

Finally, I must determine whether Scarnici was subject to the civil service laws of New Hampshire as Road Agent. The Code of Federal Regulations explains that

> The term "civil service laws" refers to a personnel system established by law which is designed to protect employees from arbitrary action, personal favoritism, and political coercion, and which uses a competitive or merit examination process for selection and placement.

29 C.F.R. § 553.11(c). This description does not fit the position of Road Agent, which is selected via election and not competitive or merit examination. At the hearing, when asked what civil service law applied to Scarnici as Road Agent, counsel responded that "there is none." Accordingly, I conclude that the position of Road Agent is not subject to the civil service laws of either New Hampshire or the Town.

As a last-ditch effort, Scarnici offers the engagement letter the Town sent to Scarnici in March of 2015. That letter provides that "in accordance with the Fair Labor Standards Act you will be considered a regular full time employee for the Town of Pittsburg and will work under the general direction of the Board of Selectmen." Doc. No. 21-8 at 1. He then concludes that "the Town, in its own letter, determined that plaintiff was an 'employee." Doc. No. 21 at 4. Not so. The letter states that Scarnici "will be considered" an employee, not that he is an employee for purposes of the FLSA. In any event, the Town's promise may create a contract right between the parties.[4] But a contract cannot shepherd plaintiff through a gate the FLSA forecloses.

---

[4] Although Scarnici brings a breach of contract claim in his complaint, the Town's motion for summary judgment is limited to Scarnici's FLSA claims.

The position of Road Agent is a public elective office of a political subdivision of a state and is not subject to civil service laws. Road Agents are not "employees" for the purposes of the FLSA. Therefore, defendant's motion for summary judgment, with respect to Scarnici's FLSA claims arising from his work as Road Agent, is granted.

**B.   Police Academy**

Scarnici's second FLSA claim arises from the time he spent training to be a part-time officer at the police academy. In a nutshell, Scarnici states that he received a Rate of Pay Notice in January 2014, indicating that he would receive $13.71 per hour, that he worked 610 hours at the Academy and that, in May 2014, he was paid a stipend of $750.00 for his time. The Town avers that this claim arose outside the normal two-year period for FLSA claims and that Scarnici has failed to demonstrate that the Town acted "willfully," which is required to trigger the statute's three-year limitations period. I agree.

Scarnici filed this complaint on May 9, 2017. Any action under the FLSA "shall be forever barred unless commenced within two years after the cause of action accrued." 29 U.S.C. § 255(a). Where a cause of action arises "out of a willful violation," however, a three-year statute of limitations applies. Id. A cause of action accrues under the FLSA at the time the properly calculated payment was due. See Figueroa v.

10

[D.C. Metro. Police Dep't](), [633 F.3d 1129, 1134-35 (D.C. Cir. 2011)]().

Accordingly, Scarnici's claims must have accrued after May 9, 2015, unless he can establish that the Town acted willfully, in which case the claims must have accrued on or before May 9, 2014.[5]

To invoke the three-year statute of limitations for willful violations of the FLSA, a plaintiff must establish that "the employer either knew or showed reckless disregard for the matter

---

[5] I note that Scarnici cannot demonstrate that a violation was "willful" unless he demonstrates that an FLSA violation actually occurred.  I am not convinced that Scarnici's training at the police academy, completion of which was a precondition for employment as a part-time officer, is within the ambit of the FLSA.

The FLSA mandates that employers compensate employees for all "hours worked."  [29 U.S.C. § 207](). The Portal-to-Portal Act of 1947, however, provides that "activities which are preliminary or postliminary to said principal activity or activities" are not compensable under the FLSA.  [Id. § 254(a)(2)](). Under First Circuit law, if training "is not an integral and indispensable part of the principal activities for which they are employed," then the Portal-to-Portal Act exempts employers from the FLSA's requirements for the hours spent in training.  [Bienkowski v. Northeastern Univ., 285 F.3d 138, 142 (1st Cir. 2002)]() (concluding that campus police officers who received a stipend for time spent in classes for certification as emergency medical technicians were not entitled to minimum wage under the FLSA); [Ballou v. General Electric Company, 433 F.2d 109, 111 (1st Cir. 1970)]() (holding that apprentices were not entitled to FLSA compensation for time spent in required off-site educational classes).  Nevertheless, in briefing and at the hearing, defendant limited its argument to the willfulness issue, so I will assume that Scarnici's training was compensable for the purposes of this motion.

of whether its conduct was prohibited by the statute." Hillstrom v. Best W. TLC Hotel, 354 F.3d 27, 33 (1st Cir. 2003) (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)). The Hillstrom court explained that, in choosing this standard, the Supreme Court expressly rejected two other available tests: whether the employer knew the Act "was in the picture" (derived from Coleman v. Jiffy June Farms, Inc., 458 F.2d 1139, 1142 (5th Cir. 1972)) and a test that asked "if the employer acted unreasonably in believing it was complying with the statute." Hillstrom, 354 F.3d at 33 (citing McLaughlin, 486 U.S. at 134). With this standard in mind, I turn to the facts.

Scarnici submits that his strongest evidence that the Town willfully violated the FLSA is a declaration by Brendon McKeague, who served as a Selectman for the Town in 2013 and 2014. See Doc. No. 21-1. McKeague relates a conversation he had with then-Chief of Police Richard Lapoint. The relevant section of his declaration states:

> I asked Chief Lapoint how he intended to pay Mr. Scarnici (and the other individual) for their time involved in attending the police academy. Chief Lapoint indicated that in the past, he had paid a stipend for academy work, and under the police budget he could not afford to pay hourly. I questioned Chief Lapoint as to whether not paying on an hourly basis for the police academy was allowed or not. Chief Lapoint told me that Mr. Scarnici and the other individual had agreed to the stipend. I did not investigate the matter further, and the selectmen agreed to pay the stipend.

Doc. No. 21-1 ¶¶ 6-10.

Even assuming that Scarnici was owed wages for his training at the police academy, I cannot conclude that this exchange demonstrates that the Town "knew or showed reckless disregard" for the possibility it was violating the FLSA. The conversation shows that McKeague asked Lapoint "whether not paying on an hourly basis for the police academy was allowed or not." That does not clear the bar of "reckless disregard" and patently does not show knowledge.

First, McKeague does not tell Lapoint that he may not pay a stipend or that it would be improper for him to do it, either of which would more plausibly indicate recklessness. Second, the conversation seems to concern whether Scarnici would be paid hourly or by stipend, not whether plaintiff would receive a sufficient hourly wage. Scarnici does not argue that payment in the form of stipend violated the FLSA, but rather that the amount of the stipend ($750) divided by his alleged hours undertaken (610) was beneath the minimum wage. Third, the undisputed facts show that the police department had regularly paid a stipend below minimum wage without complaint from officers, suggesting that the Town was not reckless in providing the same arrangement to Scarnici. Finally, the conversation lacks any reference of the FLSA, and appears to more plausibly refer to departmental practice, a moral duty, or a contractual

obligation rather than consciousness of the federal employment law schema. Simply put, a selectman asking a general question of "can we do this" does not show that the Town showed "reckless disregard" for the FLSA.

Scarnici's argument to the contrary does not change my conclusion. At oral argument, Scarnici contended that McKeague's question triggered a "duty of inquiry" on the part of the Town, and that it was therefore reckless in not looking into McKeague's question. He offers no legal authority for this proposition and I am unaware of any such holding in this circuit. Other circuits have held that employers have a duty to inquire into the conditions prevailing in their business. See Kellar v. Summit Seating, Inc., 664 F.3d 169, 177–78 (7th Cir. 2011). That duty, however, goes to whether a plaintiff can state a claim under the FLSA and not whether an employer acted willfully. Id. at 177 ("To state a claim under the FLSA, [plaintiff] must show that Summit had actual or constructive knowledge of her overtime work.").

Scarnici's unsupported legal theory would replace the Hillstrom standard with the rejected standard of "whether the employer acted unreasonably in believing it was complying with the statute." See Hillstrom, 354 F.3d at 33 (citing McLaughlin, 486 U.S. at 134). The applicable test is instead "reckless disregard" and plaintiff has not met that burden. Cf. Duryea v.

14

MetroCast Cablevision of New Hampshire, LLC, No. 15-CV-164-LM, 2017 WL 1450219, at *14 (D.N.H. Apr. 21, 2017) (applying Hillstrom test to conclude that plaintiff "must do more than speculate that [employer] may have considered FMLA leave as part of her rating . . . . [She] must show that [it] knew it would violate the FMLA, or that [it] recklessly disregarded [her] FMLA rights").

Scarnici's other arguments also fall short. He notes that, before he began at the academy, he received a "Rate of Pay" notice. He also notes that the Town maintained employment law posters at the Police Department containing FLSA requirements and that the Town's personnel manual addresses FLSA obligations. This evidence at most puts the FLSA "in the picture." See Hillstrom, 354 F.3d at 33 (rejecting so-called "Jiffy June" test). It does not show that the Town acted with "reckless disregard" for plaintiff's FLSA rights. Accordingly, Scarnici has not shown that the Town acted willfully in its alleged violation of his FLSA rights arising from his training at the police academy.

## CONCLUSION

Scarnici's FLSA claim arising from his work as the Town's Road Agent fails because the position was an elective office excluded from FLSA coverage. His FLSA claim arising from his time at the police academy is barred by the statute of

limitations because he has not demonstrated that the Town acted "willfully."  Accordingly, I grant the Town's motion for partial summary judgment on Scarnici's FLSA claims (Count I) (document no. 15).

    SO ORDERED.

<u>/s/ Paul Barbadoro</u><br>
Paul Barbadoro<br>
United States District Judge

October 22, 2018

cc:   Christopher T. Meier, Esq.
     Gary M. Burt, Esq.
     Brendan D. O'Brien, Esq.